UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.           ) <br> ) <br> EDDIE TORIE BARR   ) <br>    Defendant   ) <br> ) | CR. No. 12-001-M-LDA |

## ORDER

This matter is before the Court on the Government's Motion for Reconsideration (ECF No. 31) of this Court's Order (ECF Nos. 29 & 30) reducing the sentence of defendant Eddie Torie Barr pursuant to 18 U.S.C. § 3582(c)(2). The Court is required to GRANT the Government's motion.

### I.
### Summary

The United States Sentencing Guidelines Section 1B1.10 as amended by Amendment 759 rejects *United States v. Cardosa*, 606 F.3d 16 (1st Cir. 2010) and precludes Mr. Barr's eligibility for the retroactive sentence reduction adopted by Amendment 782. While this Court finds itself bound by Amendment 759 due to the holding of *Dillon v. United States*, 560 U.S. 817 (2010), this Court nonetheless urges the Sentencing Commission to rescind this ill-wrought Amendment. Amendment 759 is needlessly harsh. Its binding and onerous effects flout the spirit of *Booker v. United States*, 543 U.S. 220 (2005), may violate the Constitution, are unsupported by any policies enunciated at its adoption, and are in significant tension with the policies behind Amendment 782.

## II.
## Argument

On May 7, 2012, Mr. Barr was sentenced based on the crack cocaine guideline range, after this Court found that "in his [case] . . . the career offender application is too harsh and . . . n[o]t appropriate given all [his] characteristics." ECF No. 18 at 35. The First Circuit was clear in its holding and rationale in *United States v. Cardosa* that if a district judge actually based the defendant's sentence on a guideline range that was subsequently reduced, rather than the career offender range, that judge had the discretion, granted by statute, to reduce the sentence accordingly. 606 F.3d at 16. The First Circuit found that the sentencing judge was in the best position to make this determination. *Id.* at 22.

Unfortunately, the United States Sentencing Commission decided to undo the First Circuit's holding by inventing the legal fiction that any person who *could* have been sentenced under the career offender provision, was sentenced under that provision, for purposes of determining eligibility for a sentence reduction.[1] This fiction had the effect of removing the sentencing judge's discretion to reduce certain defendants' sentences. While this Court disagrees with the Sentencing Commission's diktat, the Court's statutory power to reduce a sentence is limited to situations when "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The binding policy statement governing § 3582(c)(2) proceedings is USSG §1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range) as amended by USSG App. C Vol. III, Amendment 759. *Dillon*, 560 U.S. at 819. That policy statement precludes a reduction of Mr. Barr's sentence.

---

[1] *See* United States Sentencing Commission, *Guidelines Manual*, App. C Vol. III, Amdt. 759 (Nov. 2014) (adopted Nov. 2011) (USSG).

2

Amendment 759 of the United States Sentencing Guidelines treats Mr. Barr as though he were sentenced based on the career offender provision, even though he was not. USSG App. C Vol. III, Amdt. 759. At Mr. Barr's 2012 sentencing, this Court determined that justice would not be served by applying the career offender provision to Mr. Barr, and instead sentenced Mr. Barr under the crack guidelines. ECF No. 29 at 1-2 ("sentencing goals would not be served by sentencing Mr. Barr as a career offender").

The crack guidelines were subsequently lowered by two points in 2014, and this sentencing reduction was made retroactive. USSG Supp. App. C, Amdt. 782. The Sentencing Commission explained that the reduction "would permit resources otherwise dedicated to housing prisoners to be used to reduce overcrowding, enhance programming designed to reduce the risk of recidivism, and to increase law enforcement and crime prevention efforts, thereby enhancing public safety." *Id.* The reduction achieved these salutary effects without diluting the incentives for defendants to plead guilty, cooperate with authorities, or avoid recidivism.[2] *Id.* The policies driving Amendment 782 certainly apply to Mr. Barr's situation and support its

---

[2] The Commission cited four reasons for this conclusion. USSG Supp. App. C, Amdt. 782. First, that adequate incentives to plead guilty already exist for non-violent drug defendants through the operation of the "safety valve" provision, which "allows the court, without a government motion, to impose a sentence below a statutory mandatory minimum penalty" if the court finds the defendant had sufficiently cooperated with the government. *Id.* Second, the Commission pointed to a similar 2007 sentence reduction amendment for crack cocaine, and noted that it did not negatively affect plea and cooperation behavior. *Id.* ("[I]n the fiscal year before the 2007 amendment took effect, the plea rate for crack cocaine defendants was 93.1 percent. In the two fiscal years after the 2007 amendment took effect, the plea rates for such defendants were 95.2 percent and 94.0 percent, respectively.) Third, the Commission allayed concerns about public safety by pointing to a study that detected no statistically significant difference in the rates of recidivism between offenders who were released early pursuant to the retroactive application of the 2007 crack cocaine amendment and those who served their full terms of imprisonment. *Id.* (citing USSG App. C Vol. III, Amendment 713). Fourth, the Commission recognized that the increased flexibility of the current guidelines, which allow for tailoring the defendant's sentence "based on specific conduct, reduce[s] the need to rely on drug quantity . . . as a proxy for culpability, and the amendment permits these adjustments to differentiate among offenders more effectively." *Id.*

retroactive application to his case. However, the Commission's earlier Amendment 759 renders this preferred result legally unreachable.

In 2011, the Sentencing Commission amended its rules for the retroactive application of sentencing reductions by inserting a parenthetical into the Commentary of §1B1.10. As a result, the amended provision now reads as follows:

> Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range *(i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guideline Manual or any variance)*. Accordingly, a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if: (i) none of the amendments listed in subsection (d) is applicable to the defendant; or (ii) an amendment listed in subsection (d) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment).

USSG §1B1.10 (italicized portion added to Guidelines by operation of Amendment 759).

Through application of Amendment 759, the Commission endeavors to reach back in time and mandate the imposition of the career offender provision (for the purposes of a sentencing reduction) on a defendant, despite the district judge's explicit finding that justice would not be served by the imposition of that provision on that particular defendant. The Commission's policy violates the spirit, if not the word, of *United States v. Booker*.[3] 543 U.S. 220, 246 (2005). *See also Dillon*, 560 U.S. at 833 (Stevens, J., dissenting) ("[T]reat[ing] the

---

[3] It is absurd that *Booker* and its progeny permit district courts to shun the career offender provision at sentencing upon finding that this provision does not "exemplify the Commission's exercise of its characteristic institutional role," and instead produces "disproportionately harsh sanctions . . . [that are] 'greater than necessary' in light of the purposes of sentencing set forth in 18 U.S.C. § 3553(a)," yet the Sentencing Commission binds courts by this same disproportionally harsh provision at § 3582(c)(2) proceedings. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *see also United States v. Martin*, 520 F.3d 87, 96 (1st Cir. 2008) (affirming sentencing judge's decision to sentence defendant as though he were not subject to career offender provision).

4

Commission's policy statement as a mandatory command rather than an advisory recommendation is unfaithful to *Booker*.") This policy may stand on dubious constitutional ground.[4] *Id.* And finally, it is in significant tension with the policy statement enunciated in the Commission's more recent Amendment 782. *Compare* policy reasons for Amendment 782 discussed *supra* at 1-2 (retroactive reduction of crack guidelines alleviates overcrowding without compromising sentencing purposes) with lack of policy reasons for Amendment 759 discussed *infra* at 5-6 (retroactive reduction of crack guidelines not applicable to "career offenders" sentenced under crack guidelines because of semantic structure of §1B1.1).

Having considered these infirmities, this Court nonetheless finds itself bound by the more specific language of Amendment 759 and the Supreme Court's majority holding in *United States vs. Dillon*, which found *Booker*'s holding inapplicable to § 3582(c)(2) proceedings. *Dillon*, 560 U.S. at 824. Therefore, to determine Mr. Barr's sentence reduction eligibility, the Court must succumb to the compulsory task of determining the Sentencing Commission's "applicable

---

[4] In his *Dillon* dissent, Justice Stevens raised three separation-of-powers issues implicated by the Commission's interpretation of § 3582(c)(2). 560 U.S., at 843-46. The *Dillon* majority "d[id] not respond to the dissent's separation-of-powers discussion, as that issue [wa]s not fairly encompassed within the questions presented and was not briefed by the parties." 560 U.S., 826 n.5. Therefore, the issues raised by Justice Stevens have not been settled by the Supreme Court.

First, Justice Stevens recalled that the Sentencing Reform Act, pre-*Booker*, "drew a basic distinction: Guidelines would bind; policy statements would advise," and pointed out that it may exceed the authority Congress did (or could) delegate to the Commission to bind Courts via policy statements. *Id.* at 844. Second, the Commission may not have the power, "by its own fiat, to limit the effect of [the Supreme Court's] decision in *Booker*." *Id.* Justice Stevens argued "[t]hat Congress has declined to disturb *Booker* in the five years [now ten] since its issuance demonstrates . . . that Congress has acquiesced to a discretionary Guidelines regime," whose scope must necessarily include the application of § 3582(c)(2). *Id.* Third, Justice Stevens questioned whether an "intelligible principle" exists to guide the Commission's sentence reduction and retroactivity policies so as to comport with the Court's nondelegation doctrine. *Id.* at 842-45 (citing *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). *See also Mistretta v. United States*, 488 U.S. 361, 421 (1989) (Scalia, J., dissenting) ("The delegation of lawmaking authority to the Commission is, in short, unsupported by any legitimating theory to explain why it is not a delegation of legislative power. . . . [T]he consequence is to facilitate and encourage judicially uncontrollable delegation.")

guideline range" for Mr. Barr, rather than looking to the guideline range the Court actually used to sentence Mr. Barr.

In Mr. Barr's case, the "guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guideline Manual or any variance" is the career offender provision, §4B1.1. The Sentencing Commission deems this Mr. Barr's "applicable guidelines range" despite the contrary finding of the sentencing judge. Because Amendment 782 "does not have the effect of lowering the defendant's applicable guideline range," "a reduction in [Mr. Barr's] term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement." *Id.*

This result is mandated by Amendment 759, which discarded the nuanced approach to sentence reductions followed by the First Circuit, and at least three other circuits, in favor of blanket denials.[5] The First Circuit's approach had recognized that "cases are not all of one size or shape," and therefore "let the district judge – who after all did the original sentencing – decide in the first instance whether [a reduction is appropriate]." *United States v. Cardosa*, 606 F.3d 16, 21 (1st Cir. 2010). This approach was implicitly approved by the Supreme Court in *Freeman v. United States*, 131 S. Ct. 2685 (2011), which held that defendants who entered plea agreements that used or employed a particular Guidelines range were eligible for relief under § 3582(c)(2) if that range was later reduced. The *Freeman* plurality opinion echoed *Cardosa* in rejecting the Government's argument to adopt the position embodied by Amendment 759:

---

[5] *Cardosa*, 606 F.3d 16 (1st Cir. 2010) (allowing reduction); *United States v. Flemming*, 617 F.3d 252, 254 (3rd Cir. 2010), *as amended* (Sept. 27, 2010) (same); *United States v. Munn*, 595 F.3d 183, 194-95 (4th Cir. 2010) (same); *United States v. McGee*, 553 F.3d 225, 227-28 (2d Cir. 2009) (per curiam) (same); *United States v. Wesson*, 583 F.3d 728, 732 (9th Cir. 2009) (dicta).

> The Government would enact a categorical bar on § 3582(c)(2) relief. But such a bar would prevent district courts from making an inquiry that is within their own special knowledge and expertise. What is at stake in this case is a defendant's eligibility for relief, not the extent of that relief. Indeed, even where a defendant is permitted to seek a reduction, the district judge may conclude that a reduction would be inappropriate. District judges have a continuing professional commitment, based on scholarship and accumulated experience, to a consistent sentencing policy. They can rely on the frameworks they have devised to determine whether and to what extent a sentence reduction is warranted in any particular case. They may, when considering a § 3582(c)(2) motion, take into account a defendant's decision to enter into an 11(c)(1)(C) agreement. If the district court, based on its experience and informed judgment, concludes the agreement led to a more lenient sentence than would otherwise have been imposed, it can deny the motion, for the statute permits but does not require the court to reduce a sentence. This discretion ensures that § 3582(c)(2) does not produce a windfall.

*Freeman v. United States*, 131 S. Ct. 2685, 2694 (2011). The plurality in *Freeman* would have permitted a reduction in Mr. Barr's case, yet Amendment 759, adopted just months afterward, denies it.[6] 131 S. Ct. at 2692-93 ("§ 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement").

With Amendment 759, the Sentencing Commission closed the door of lenity on anyone who qualified for the career offender provision, regardless of how harsh the result. And any type of imposition of the career offender provision, even if only to render certain defendants ineligible

---

[6] This Court reads the controlling opinion in *Freeman* to also have permitted a reduction in a case such as Mr. Barr's. *See* 131 S. Ct. at 2704 (Roberts, J., dissenting) ("Is a . . . sentence still subject to reduction if the parties relied on the wrong sentencing range? Justice Sotomayor's . . . answer is 'yes.'"); *but see United States v. Pleasant*, 704 F.3d 808, 812-14 (9th Cir.) *cert. denied*, (2013) (reaching a different conclusion). The disagreement is academic because this Court agrees with the Ninth Circuit that regardless of which interpretation is correct, "Amendment 759 . . . abrogated [this Court's view of] *Freeman*." *Id.* at 812.

7

for sentence reductions, is notoriously harsh when those defendants are nonviolent drug offenders.[7]

"Section 3582(c)(2) empowers district judges to correct sentences that depend on frameworks that later prove unjustified. There is no reason to deny § 3582(c)(2) relief to defendants who linger in prison pursuant to sentences that would not have been imposed but for a since-rejected, excessive range." *Freeman v. United States*, 131 S. Ct. 2685, 2689 (2011). In Mr. Barr's case, the career offender range was rejected by the sentencing judge, while the crack range was rejected by the Sentencing Commission. There is no principled reason why Mr. Barr

---

[7] Sentences recommended by the career offender guideline are among the most severe and least likely to promote sentencing purposes in the United States Sentencing Guidelines Manual. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, at 133-34 (2004). One problem is that the guideline range is keyed to the statutory maximum, the result of a congressional directive to the United States Sentencing Commission. Another problem--created by the Commission itself--is that the class of career offenders is defined much more broadly than the statute requires. Neither the severity of the guideline nor its breadth is the product of careful study, empirical research, or national experience.

. . . .

[The career offender guideline] was initially based on a congressional directive requiring the Commission to set guideline ranges at or near the statutory maximum for certain specifically described repeat violent and repeat drug offenders. The Commission then significantly deviated from the directive, applying the severe punishments directed by Congress to offenders not described by Congress, without stated reasons or careful study, and contrary to feedback from the courts and its own empirical research.

Sentences recommended by the career offender guideline are many orders of magnitude higher than time served before the guidelines, than recommended by the ordinary guideline, or than sound policy would suggest, and in many instances than the congressional directive requires. The typical defendant subject to the career offender guideline today is a low-level drug offender, or occasionally a bank robber, with two prior state convictions for minor drug offenses or "crimes of violence," broadly defined to include offenses that are not violent, for which they received little or no jail time.

Amy Baron-Evans et. al., Deconstructing the Career Offender Guideline, 2 Charlotte L. Rev. 39, 40-42 (2010).

should linger in prison for the time determined by either of those ranges. *See Rita v. United States*, 551 U.S. 338, 347 (2007) (disapproving of "grant[s of] greater factfinding leeway to [the Sentencing Commission] than to a district judge").[8]

One would think that the Sentencing Commission would at least offer a reasoned explanation when issuing a policy statement that rejected the considered opinions of not only the First Circuit, but also three other Circuit courts and at least four Justices of the Supreme Court.[9] And one would be disappointed, because the Commission offered simply the following:

> [T]he amendment amends the commentary to §1B1.10 to address an application issue. Circuits have conflicting interpretations about when, if at all, the court applies a departure provision before determining the "applicable guideline range" for purposes of §1B1.10. The First, Second, and Fourth Circuits have held that, for §1B1.10 purposes, at least some departures (e.g., departures under §4A1.3 (Departures Based on Inadequacy of Criminal History Category) (Policy Statement)) are considered before determining the applicable guideline range, while the Sixth, Eighth, and Tenth Circuits have held that "the only applicable guideline range is the one established before any departures".[10] See United States v. Guyton, 636 F.3d 316, 320 (7th Cir. 2011) (collecting and discussing cases; holding that departures under §5K1.1 are considered after determining the applicable guideline range but declining to address whether departures under §4A1.3 are considered before or after). Effective November 1, 2010, the Commission amended §1B1.1 (Application Instructions) to provide a three-step approach in determining the sentence to be imposed. See USSG App. C, Amend. 741 (Reason for Amendment). Under §1B1.1 as so amended, the court first determines the guideline range and then considers departures. Id. ("As amended, subsection (a) addresses how to apply the provisions in the Guidelines Manual to properly determine the kinds of sentence and the guideline range. Subsection (b) addresses the need to consider the policy statements and commentary to determine whether a departure is warranted."). Consistent with the three-step approach adopted by Amendment 741 and reflected in §1B1.1, the amendment adopts the approach of the Sixth, Eighth, and Tenth Circuits and amends

---

[8] The injustice embodied in the Sentencing Commission's position is evident when on realizes the fact that if this Court sentenced Mr. Barr today, it would have sentenced him to the lowered drug guideline.

[9] *See supra* notes 5-6 and accompanying text.

[10] The Third Circuit had reached the same conclusion. *United States v. Flemming*, 617 F.3d 252, 254 (3rd Cir. 2010), *as amended* (Sept. 27, 2010) ("we join the First, Second, and Fourth Circuit Courts in concluding that such a defendant is eligible for a sentence reduction under § 3582(c)(2)").

9

> Application Note 1 to clarify that the applicable guideline range referred to in §1B1.10 is the guideline range determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance.

USSG Supp. App. C, Amdt. 759.

The only explanation that can be gleaned from that text is that the Commission felt that Amendment 759 fit better semantically with the structure of §1B1.1.[11] That is not a persuasive reason to deny defendants the opportunity for lenity, when the district judge finds it warranted. The Sentencing Commission provided no principled analysis in its guidelines for why it chose three circuits over four circuits and at least four Justices in determining the retroactive application of sentencing reductions. The approach chosen by the Sentencing Commission establishes a one-size fits all regime that denies defendants the opportunity for individual review. Justice, and the judges who administer it, deserve better.

### III.
### Conclusion

*Booker* and its progeny should have compelled the Sentencing Commission to allow District Courts to properly exercise their individual judgments in applying retroactive sentencing reductions.[12] No purpose is served by enforcing a punitive residual effect of the career offender provision on a defendant for whom the sentencing judge had found that provision to be unduly harsh. This Court calls on the Commission to rescind its 2011 Amendment 759, make the recession retroactive, and to follow the lead of the First, Second, Third, and Fourth Circuit

---

[11] Lest one thought the policy explanation might be hidden in the Reason for Amendment 741, referenced in the Reason for Amendment 759, it is not. That policy statement is similarly lacking in policy analysis. *See* USSG App. C Vol. III, Amdt. 741.

[12] *See, e.g., Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Boardman*, 528 F.3d 86 (1st Cir. 2008).

Courts, and a significant contingent of the Supreme Court, by allowing district judges discretion to reduce sentences based on guideline ranges that were later reduced.

The Court reluctantly GRANTS Government's Motion for Reconsideration (ECF No. 31) and VACATES its prior orders (ECF Nos. 29 & 30).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

September 24, 2015